IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHRISTINA L. PORRITT and | ) | |
| LOIS HESS, | ) | |
| | ) | |
| Relators, | ) | |
| | ) | |
| vs. | ) | No. _____ |
| | ) | |
| AMSCAN HOLDINGS, INC., | ) | |
| AMSCAN, INC., | ) | |
| M&D INDUSTRIES INTERNATIONAL, INC., | ) | |
| ANAGRAM INTERNATIONAL, INC., | ) | |
| FLOWERS, INC., d/b/a burton + BURTON™, and, | ) | |
| BETALLIC, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

_____

**COMPLAINT**

_____

Relators CHRISTINA PORRITT and LOIS HESS ("Relators"), by and through

their undersigned attorneys, state the following against the above-named Defendants

and allege as follows:

**NATURE OF THE ACTION**

1.       This is a *qui tam* action for false patent marking under 35 U.S.C. § 292.

2.       As set forth in detail below, Defendants have violated 35 U.S.C. § 292(a)

by falsely advertising and/or marking articles with expired patents for the purpose of

deceiving their competitors and the public into believing that such articles are covered by

the falsely advertised and/or marked patents.

3.      Relators seek an award of monetary damages against each Defendant, one-half of which shall be paid to the United States, the other half of which shall be paid to Relators pursuant to 35 U.S.C. § 292(b).

## THE PARTIES

4.      Relator Christina Porritt is a natural person and citizen and resident of the Southern District of Illinois.

5.      Relator Lois Hess is a natural person and citizen and resident of Orange County, California, located in the United States District Court for the Central District of California – Southern Division.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§1331 and 1338(a).

7.      Venue is proper in this District under 28 U.S.C. §§1391(c) and 1395(a), because Defendants have conducted and continue to conduct business in this District through the advertising and/or sale of their products which are the subject matter of this Complaint to consumers throughout this District.  Upon information and belief, such sales are substantial, continuous, and systematic.

8.      Relators have standing to bring this action under 35 U.S.C. § 292(b), which provides that "any person" may sue for civil monetary penalties for false advertising or marking in connection with any unpatented articles and/or marking of patents.

## BACKGROUND

9.      The false marking patent statute, 35 U.S.C. § 292, exists to insure that the public has accurate information on the existence of patent rights.  As summarized by the Federal Circuit, the patent marking statute exists to:  1) help avoid innocent infringement

of patent articles; 2) encourage patent holders to give notice to the public that an article is patented; and 3) aid the public in identifying whether an article is patented. *Nike, Inc. v. Wal-Mart Stores, Inc.,* 138 F.3d 1437, 1443 (Fed. Cir. 1998).

10.     When a patent expires, all monopoly rights in the patent terminate irrevocably.  Therefore, a product marked with an expired patent is not protected by such expired patent.

11.     Falsely advertising an article or falsely marking an article with an expired patent harms the public interest in numerous ways, including:

a.     Stifling competition in the marketplace and deterring innovation;

b.     Deterring scientific research when an inventor sees a marked article and foregoes continued research to avoid potential infringement;

c.     Unnecessarily increasing costs to competitors who must invest in efforts to "design around" a patent, or investigate and analyze the validity or enforceability of a patent;

d.     Deterring competitors from entering the market with competing articles;

e.     Permitting the patentee to impermissibly extend the term of its monopoly; and,

f.     Confusing and misleading the public, as the expiration date of a U. S. Patent is not easily ascertainable by the public at the time of purchase.  Moreover, while basic information about a patent may be available to the public via the website of the U. S. Patent and

Trademark Office, a member of the public must conduct a

thorough and complicated analysis to determine whether a patent is

expired.

## THE EXPIRED PATENTS

12.    U.S. Patent No. 4,917,646 ("the '646 Patent") entitled SELF-SEALING

VALVE, A SELF-SEALING, NON-LATEX BALLOON, AND A METHOD FOR

PRODUCING SUCH A BALLOON, was filed on August 17, 1988, and issued on

April 17, 1990.  A true and correct copy of the '646 Patent is attached as Exhibit 1 to this

Complaint.

13.    The '646 Patent expired no later than August 17, 2008.

14.    U.S. Patent No. 4,077,588 ("the '588 Patent") entitled PERMANENTLY

BUOYANT BALLOON, was filed on September 15, 1975, and issued on March 7, 1978.

A true and correct copy of the '588 Patent is attached as Exhibit 2 to this Complaint.

15.    The '588 Patent expired no later than September 15, 1995.

## COUNT I – False Marking of the '646 Patent

For their cause of action against M & D Industries International, Inc., Amscan,

Inc., and Amscan Holdings, Inc., Relators state the following:

16.    Relators reallege and incorporate herein by reference the allegations stated

in Paragraphs 1 - 15 of this Complaint.

17.    Upon information and belief, Defendant M & D INDUSTIRES

INTERNATIONAL, INC. ("M & D Industries") is a foreign corporation having its

principal place of business at 80 Grasslands Road, Elmsford, New York  10523.

18.     At all times relevant herein, Defendant, AMSCAN, INC. (Amscan, Inc.) was (and is) a corporation organized and existing under the laws of Delaware having its principal place of business at 80 Grasslands Road, Elmsford, New York 10523.

19.     Upon information and Belief, at all times relevant herein, M & D Industries was (and is) a division of Amscan, Inc.

20.     At all times relevant herein, Defendant AMSCAN HOLDINGS, INC. ("Amscan Holdings") was (and is) a corporation organized and existing under the laws of Delaware, having its principal place of business at 80 Grasslands Road, Elmsford, New York 10523.

21.     Upon information and belief, at all times relevant herein, Amscan, Inc. was (and is) a wholly owned subsidiary of Amscan Holdings.

22.     That the business of Amscan Holdings was (and is) carried out through its wholly-owned subsidiary, Amscan, Inc. and its division, M & D Industries International, Inc. (hereafter collectively and alternatively referred to as the "M & D Defendants").

23.     Upon information and belief, Amscan Holdings, through its wholly-owned subsidiary, Amscan, Inc., through its division, M & D Industries International, Inc. make, sell, and advertise or have made, sold, and advertised a variety of products for sale to distributors and retailers and for use by the consuming public.

24.     Upon information and belief, Amscan Holdings, Amscan, Inc. and M & D Industries are sophisticated business entities with extensive experience in the procurement, acquisition, litigation and/or use of patents in the United States.

25.     Upon information and belief, because of the nature of their business, Amscan Holdings, Amscan, Inc. and/or M & D Industries actively seek, maintain and/or license a number of patents.

26.     Upon information and belief, Amscan Holdings, Amscan, Inc. and/or M & D Industries claim to own, or have licenses under, a substantial number of patents and patent applications.

27.     Upon information and belief, Amscan Holdings, Amscan, Inc. and/or M & D Industries have an in-house legal department (or otherwise retains attorneys) that is/are responsible for their intellectual property and ensuring compliance with marketing, labeling, and advertising laws.

28.     Upon information and belief, as sophisticated business entities, Amscan Holdings, Amscan, Inc. and/or M & D Industries knew or reasonably should have known of the requirements and provisions of 35 U.S.C. § 292.

29.     Upon information and belief, Amscan Holdings, by and through its wholly-owned subsidiary, Amscan, Inc. and its division, M & D Industries, have, in the past, advertised, marked or caused to be marked, and continue to advertise, mark or cause to be marked, products with at least one expired patent.

30.     Specifically, upon information and belief, the M & D Defendants have, in the past, advertised, marked or caused to be marked, and continue to advertise, mark or cause to be marked, at least the following products with the '646 Patent:

        a.     The "Dora the Explorer" SuperShape™ Foil Balloon.  A photo of the balloon is attached hereto as Exhibit 3 to this Complaint.

        b.     The packaging for the "Dora the Explorer" SuperShape™ Foil Balloon.  A photo of the packaging for said balloon is attached hereto as Exhibit 4 to this Complaint.

        c.     The "SpongeBob SquarePants™" Happy Birthday Singing Balloon.  A photo of the balloon is attached hereto as Exhibit 5 to this Complaint.

        d.      The packaging for the "SpongeBob SquarePants™" Happy Birthday Singing Balloon.  A photo of the packaging for said balloon is attached hereto as Exhibit 6 to this Complaint.

31.     Upon information and belief, and as seen on Exhibits 3-6, the instances of false marking as shown in Exhibits 3-6 are representative and not exhaustive of all of the uses of the '646 Patent.

32.     The M & D Defendants knew, or reasonably should have known, that the purpose of advertising or otherwise marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

33.     Upon information and belief, the M & D Defendants knew, or reasonably should have known, that the products they advertised for sale, marked and continue to advertise and/or mark with the '646 Patent are not covered by the expired patent as advertised or otherwise marked on their products because expired patents have no monopoly rights.

34.     Upon information and belief, the M & D Defendants have advertised, marked and continue to advertise or otherwise mark its products with the '646 Patent for the purpose of consciously deceiving the public into believing that its products are covered by the '646 Patent.

35.     Upon information and belief, the M & D Defendants intentionally included the '646 Patent on their products in a conscious attempt to prevent competitors from making and selling the same or similar or competing products.

36.     Each instance of false advertising and/or marking of the M & D Defendants' products is likely to, or at least has the potential to, discourage or deter persons and companies from making, selling and/or advertising similar or competing products.

37.     By falsely advertising and/or marking their products with a patent that has expired, the M & D Defendants have benefitted commercially and financially.

38.     Thus, by advertising, marking and continuing to advertise or otherwise mark their products with the '646 Patent without a reasonable belief that such products were covered by the '646 Patent, the M & D Defendants have injured the sovereign interests of the United States as well as the public interest, and have discouraged competition and innovation in competing products.

### COUNT II – False Marking of the '646 Patent

For their cause of action against Anagram International, Inc., Amscan, Inc., and Amscan Holdings, Inc., Relators state the following:

39.     Relators reallege and incorporate herein by reference the allegations stated in Paragraphs 1 - 15 of this Complaint.

40.     Defendant, ANAGRAM INTERNATIONAL, INC. ("Anagram") is a corporation organized and existing under the laws of Minnesota, having its principal place of business at 7700 Anagram Drive, Minneapolis, Minnesota  55344.

41.     Upon information and belief, at all times relevant herein, Defendant, AMSCAN, INC. (Amscan, Inc.) was (and is) a corporation organized and existing under the laws of Delaware having its principal place of business at 80 Grasslands Road, Elmsford, New York 10523.

42.     At all times relevant herein, Anagram was (and is) a division of Amscan, Inc.

43.     At all times relevant herein, Defendant AMSCAN HOLDINGS, INC. ("Amscan Holdings") was (and is) a corporation organized and existing under the laws of Delaware, having its principal place of business at 80 Grasslands Road, Elmsford, New York 10523.

44.     Upon information and belief, at all times relevant herein, Amscan, Inc. was (and is) a wholly owned subsidiary of Amscan Holdings.

45.     That the business of Amscan Holdings was (and is) carried out through its wholly-owned subsidiary, Amscan, Inc. and its division, Anagram International, Inc. (hereafter collectively and alternatively referred to as the "Anagram Defendants").

46.     Upon information and belief, Amscan Holdings, through its wholly-owned subsidiary, Amscan, Inc., through its division, Anagram International, Inc. make, sell, and advertise or have made, sold, and advertised a variety of products for sale to distributors and retailers and for use by the consuming public.

47.     Upon information and belief, Amscan Holdings, Amscan, Inc. and Anagram International, Inc.  are sophisticated business entities with extensive experience in the procurement, acquisition, litigation and/or use of patents in the United States.

48.     Upon information and belief, because of the nature of their business, Amscan Holdings, Amscan, Inc. and/or Anagram International, Inc. actively seek, maintain and/or license a number of patents.

49.     Upon information and belief, Amscan Holdings, Amscan, Inc. and/or Anagram International, Inc. claim to own, or have licenses under, a substantial number of patents and patent applications.

50.     Upon information and belief, Amscan Holdings, Amscan, Inc. and/or Anagram International, Inc. have an in-house legal department (or otherwise retains attorneys) that is/are responsible for their intellectual property and ensuring compliance with marketing, labeling, and advertising laws.

51.     Upon information and belief, as sophisticated business entities, Amscan Holdings, Amscan, Inc. and/or Anagram International, Inc. knew, or reasonably should have known, of the requirements and provisions of 35 U.S.C. § 292.

52.     Upon information and belief, Amscan Holdings, by and through its wholly-owned subsidiary, Amscan, Inc. and its division Anagram International, Inc. have, in the past, advertised, marked or caused to be marked, and continue to advertise, mark or cause to be marked, products with at least one expired patent.

53.     Specifically, upon information and belief, the Anagram Defendants have, in the past, advertised, marked or caused to be marked, and continue to advertise, mark or cause to be marked, at least the following products with the '646 Patent:

a.     The "Welcome Home" Mylar Balloon.  A photo of the balloon is attached hereto as Exhibit 7 to this Complaint.

b.     The packaging for the "Happy Birthday" Sing-A-Tune® Balloon. A photo of the packaging for said balloon is attached hereto as Exhibit 8 to this Complaint.

c.     The packaging for the "Happy Birthday" SuperShape™ Balloon. A photo of the packaging for said balloon is attached hereto as Exhibit 9 to this Complaint.

d.     The front cover and page 97 of the 2010 Anagram Balloons – Valentine Catalog.  Screen shots of said catalog are attached hereto as Exhibits 10 and 11.

e.      The front cover and page 187 of the 2010 Anagram Spring Balloons Catalog.  Screen shots of said catalog are attached hereto as Exhibits 12 and 13.

f.      The front cover and page 361 of the 2010 Anagram "Everyday" Catalog.  Screen shots of said catalog are attached hereto as Exhibits 14 and 15.

54.     As more fully set forth in Exhibits 7-15, the Anagram Defendants advertised the '646 Patent in their online catalogs as recently as June 26, 2010 anagramballoons.com/catalogs.aspx.  Upon information and belief, and as seen on Exhibits 7-15, the instances of false marking as shown in Exhibits 7-15 are representative and not exhaustive of all of the uses of the '646 Patent.

55.     The Anagram Defendants knew, or reasonably should have known, that the purpose of advertising or otherwise marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

56.     Upon information and belief, the Anagram Defendants knew, or reasonably should have known, that the products they advertised for sale, marked and continue to advertise and/or mark with the '646 Patent are not covered by the expired patent as advertised or otherwise marked on their products because expired patents have no monopoly rights.

57.     Upon information and belief, the Anagram Defendants have advertised, marked and continue to advertise or otherwise mark their products with the '646 Patent for the purpose of consciously deceiving the public into believing that their products are covered by the '646 Patent.

58.     Upon information and belief, the Anagram Defendants intentionally included the '646 Patent on their products in a conscious attempt to prevent competitors from making and selling the same or similar or competing products.

59.     Each instance of false advertising and/or marking of the Anagram Defendants' products is likely to, or at least has the potential to, discourage or deter persons and companies from making or selling similar or competing products.

60.     By falsely advertising and/or marking their products with a patent that has expired, the Anagram Defendants have benefitted commercially and financially.

61.     Thus, by advertising, marking and continuing to advertise or otherwise mark their products with the '646 Patent without a reasonable belief that such products were covered by the '646 Patent, the Anagram Defendants have injured the sovereign interests of the United States as well as the public interest, and have discouraged competition and innovation in competing products.

### COUNT III – False Marking of the '646 Patent

For their cause of action against FLOWERS, INC. doing business as burton + BURTON™, Relators state the following:

62.     Relators reallege and incorporate herein by reference the allegations stated in Paragraphs 1 - 15 of this Complaint.

63.     Defendant, FLOWERS, INC., doing business as burton + BURTON™, is a corporation organized and existing under the laws of Georgia, having its principal place of business at 325 Cleveland Road, Bogart, Georgia 30622.

64.     Upon information and belief, Flowers, Inc., doing business as burton + BURTON™, makes, sells, and advertises or has made, sold, and advertised a variety of products for sale to distributors and retailers and for use by the consuming public.

65.     Upon information and belief, Flowers, Inc., doing business as burton + BURTON™ (hereafter, "Burton"), is a sophisticated business entity with extensive experience in the procurement, acquisition, litigation and/or use of patents in the United States.

66.     Upon information and belief, because of the nature of its business, Burton actively seeks, maintains and/or licenses a number of patents.

67.     Upon information and belief, Burton claims to own, or have licenses under, a substantial number of patents and patent applications.

68.     Upon information and belief, Burton has an in-house legal department (or otherwise retains attorneys) that is/are responsible for their intellectual property and ensuring compliance with marketing, labeling, and advertising laws.

69.     Upon information and belief, as sophisticated business entities, Burton knew, or reasonably should have known, of the requirements and provisions of 35 U.S.C. § 292.

70.     Upon information and belief, Burton has, in the past, advertised, marked or caused to be marked, and continues to advertise, mark or cause to be marked, products with at least one expired patent.

71.     Specifically, upon information and belief, Burton has, in the past, advertised, marked or caused to be marked, and continues to advertise, mark or cause to be marked, at least the following product with the '646 Patent:

      a.     The "Happy Father's Day" Mylar Balloon.  A photo of the balloon is attached hereto as Exhibit 16 to this Complaint.

72.     Upon information and belief, and as seen on Exhibit 16, the instance of false marking as shown in Exhibit 16 is representative and not exhaustive of all of the uses of the '646 Patent.

73.     At all times relevant herein, Burton knew, or reasonably should have known, that the purpose of advertising or otherwise marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

74.     Upon information and belief, Burton knew, or reasonably should have known, that the products it advertised for sale, marked and continued to advertise and/or mark with the '646 Patent are not covered by the expired patent as advertised or otherwise marked on its products because expired patents have no monopoly rights.

75.     Upon information and belief, Burton has advertised, marked and continues to advertise or otherwise mark its products with the '646 Patent for the purpose of consciously deceiving the public into believing that its products are covered by the '646 Patent.

76.     Upon information and belief, Burton intentionally included the '646 Patent on its products in a conscious attempt to prevent competitors from making and selling the same or similar or competing products.

77.     Each instance of false advertising and/or marking of the Burton products is likely to, or at least has the potential to, discourage or deter persons and companies from making or selling similar or competing products.

78.     By falsely advertising and/or marking its products with a patent that has expired, Burton has benefitted commercially and financially.

79.     Thus, by advertising, marking and continuing to advertise or otherwise mark its products with the '646 Patent without a reasonable belief that such products were covered by the '646 Patent, Burton has injured the sovereign interests of the United States as well as the public interest, and has discouraged competition and innovation in competing products.

## COUNT IV – False Marking of the '646 Patent

For their cause of action against BETALLIC, L.L.C., Relators state the following:

80.     Relators reallege and incorporate herein by reference the allegations stated in Paragraphs 1 - 15 of this Complaint.

81.     Defendant, BETALLIC, L.L.C., is a limited liability company organized and existing under the laws of Missouri having its principal place of business at 2326 Grissom, St. Louis, MO  63146.

82.     Upon information and belief, BETALLIC, L.L.C. (hereafter, "Betallic") makes, sells, and advertises or has made, sold, and advertised a variety of products for sale to distributors and retailers and for use by the consuming public.

83.     Upon information and belief, Betallic is a sophisticated business entity with extensive experience in the procurement, acquisition, litigation and/or use of patents in the United States.

84.     Upon information and belief, because of the nature of its business, Betallic actively seeks, maintains and/or licenses a number of patents.

85.     Upon information and belief, Betallic claims to own, or have licenses under, a substantial number of patents and patent applications.

86.     Upon information and belief, Betallic has an in-house legal department (or otherwise retains attorneys) that is/are responsible for their intellectual property and ensuring compliance with marketing, labeling, and advertising laws.

87.     Upon information and belief, as sophisticated business entities, Betallic knew or reasonably should have known of the requirements and provisions of 35 U.S.C. § 292.

88.     Upon information and belief, Betallic has, in the past, advertised, marked or caused to be marked, and continues to advertise, mark or cause to be marked, products with expired patents.

89.     Specifically, upon information and belief, Betallic has, in the past, advertised, marked or caused to be marked, and continues to advertise, mark or cause to be marked, at least the following product with the '646 Patent:

        a.     The Yellow Smiley Face with Lips Mylar Balloon. A photo of the balloon is attached hereto as Exhibit 17 to this Complaint.

90.     Upon information and belief, and as seen on Exhibit 17, the instance of false marking as shown in Exhibit 17 is representative and not exhaustive of all of the uses of the '646 Patent.

91.     At all times relevant herein, Betallic knew, or reasonably should have known, that the purpose of advertising or otherwise marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

92.     Upon information and belief, Betallic knew, or reasonably should have known, that the products it advertised for sale, marked and continued to advertise and/or mark with the '646 Patent are not covered by the expired patent as advertised or otherwise marked on its products because expired patents have no monopoly rights.

93.     Upon information and belief, Betallic has advertised, marked and continues to advertise or otherwise mark its products with the '646 Patent for the purpose of consciously deceiving the public into believing that its products are covered by the '646 Patent.

94.     Upon information and belief, Betallic intentionally included the '646 Patent on its products in a conscious attempt to prevent competitors from making and selling the same or similar or competing products.

95.     Each instance of false advertising and/or marking of the Betallic products is likely to, or at least has the potential to, discourage or deter persons and companies from making or selling similar or competing products.

96.     By falsely advertising and/or marking its products with patents that have expired, Betallic has benefitted commercially and financially.

97.     Thus, by advertising, marking and continuing to advertise or otherwise mark its products with the '646 Patent without a reasonable belief that such products were covered by the '646 Patent, Betallic has injured the sovereign interests of the United States as well as the public interest, and have discouraged competition and innovation in competing products.

### COUNT V – False Marking of the '588 Patent

For their cause of action against BETALLIC, L.L.C., Relators state the following:

98.     Relators reallege and incorporate herein by reference the allegations stated in Paragraphs 1 - 15 of this Complaint.

99.     Defendant, BETALLIC, L.L.C., is a limited liability company organized and existing under the laws of Missouri having its principal place of business at 2326 Grissom, St. Louis, MO  63146.

100.    Upon information and belief, BETALLIC, L.L.C. (hereafter, "Betallic") makes, sells, and advertises or has made, sold, and advertised a variety of products for sale to distributors and retailers and for use by the consuming public.

101.    Upon information and belief, Betallic is a sophisticated business entity with extensive experience in the procurement, acquisition, litigation and/or use of patents in the United States.

102.    Upon information and belief, because of the nature of its business, Betallic actively seeks, maintains and/or licenses a number of patents.

103.    Upon information and belief, Betallic claims to own, or have licenses under a substantial number of patents and patent applications.

104.    Upon information and belief, Betallic has an in-house legal department (or otherwise retains attorneys) that is/are responsible for their intellectual property and ensuring compliance with marketing, labeling, and advertising laws.

105.    Upon information and belief, as sophisticated business entities, Betallic knew or reasonably should have known of the requirements and provisions of 35 U.S.C. § 292.

106.    Upon information and belief, Betallic has, in the past, advertised, marked or caused to be marked, and continues to advertise, mark or cause to be marked, products with expired patents.

107.    Specifically, upon information and belief, Betallic has, in the past, advertised, marked or caused to be marked, and continues to advertise, mark or cause to be marked, at least the following product with the '588 Patent:

a.    The Yellow Smiley Face with Lips Mylar Balloon.  A photo of the balloon is attached hereto as Exhibit 17 to this Complaint.

108.    Upon information and belief, and as seen on Exhibit 17, the instance of false marking as shown in Exhibit 17 is representative and not exhaustive of all of the uses of the '588 Patent.

109.    At all times relevant herein, Betallic knew, or reasonably should have known, that the purpose of advertising or otherwise marking a product with a patent number is to put competitors and the public at large on notice of exclusive and legally enforceable rights with respect to that product.

110.    Upon information and belief, Betallic knew, or reasonably should have known, that the products it advertised for sale, marked and continued to advertise and/or mark with the '588 Patent are not covered by the expired patent as advertised or otherwise marked on its products because expired patents have no monopoly rights.

111.    Upon information and belief, Betallic has advertised, marked and continues to advertise or otherwise mark its products with the '588 Patent for the purpose of consciously deceiving the public into believing that its products are covered by the '588 Patent.

112.    Upon information and belief, Betallic intentionally included the '588 Patent on its products in a conscious attempt to prevent competitors from making and selling the same or similar or competing products.

113.    Each instance of false advertising and/or marking of the Betallic products is likely to, or at least has the potential to, discourage or deter persons and companies from making or selling similar or competing products.

114.    By falsely advertising and/or marking its products with patents that have expired, Betallic has benefitted commercially and financially.

115.    Thus, by advertising, marking and continuing to advertise or otherwise mark its products with the '588 Patent without a reasonable belief that such products were covered by the '588 Patent, Betallic has injured the sovereign interests of the United States as well as the public interest, and have discouraged competition and innovation in competing products.

## PRAYER FOR RELIEF

WHEREFORE, Relators pray that this Court enter judgment in their favor and against Defendants as follows:

A.    Entering an injunction prohibiting each Defendant, and its officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from further violating 35 U.S.C. § 292;

B.    Order each Defendant to pay a civil monetary fine of $500.00 for each false advertising or marking offense, or an alternative amount as determined by the Court, one-half of which shall be paid to the United States;

C.    Order each Defendant to provide an accounting for any falsely advertised and/or marked products not presented at trial and a monetary award set by the Court for such falsely marked articles;

D.      Order each Defendant to pay all costs of this action, including attorneys'

fees and all available interest; and,

E.      Grant Relators any such other and further relief as the Court may deem

just and equitable.

Respectfully submitted,

 /s/  David Cates
JUDY L. CATES # 00414743
DAVID CATES #06289198
*The Cates Law Firm, L.L.C.*
216 West Pointe Drive, Suite A
Swansea, IL  62226
Telephone:     (618) 277-3644
Facsimile:      (618) 277-7882
E-mail:          jcates@cateslaw.com
                    dcates@cateslaw.com

***Attorneys for Relators***